**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **In re:** | ) | Case No. 23-00285-ELG |
| | ) | |
| **AVAMERE NPS STABLES LLC** | ) | (Chapter 11) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| **In re:** | ) | Case No. 23-00286-ELG |
| | ) | |
| **AVAMERE NPS CARPENTERS LLC** | ) | (Chapter 11) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DISCLOSURE STATEMENT**
**WITH RESPECT TO DEBTORS' JOINT PLAN OF LIQUIDATION**

**I.   INTRODUCTION**

Avamere NPS Stables LLC ("Stables") and Avamere NPS Carpenters LLC ("Carpenters," and collectively with Stables, the "Debtors"), in the above-captioned bankruptcy case, hereby respectfully submits this disclosure statement (the "Disclosure Statement") pursuant to Bankruptcy Code § 1125, in connection with the Debtors' Plan of Liquidation (the "Plan"). A copy of the Plan is annexed as **Exhibit A** to this Disclosure Statement.

This Disclosure Statement sets forth certain information regarding the Debtors' pre-petition history, the reason why it consented to involuntary bankruptcy, and significant events that have occurred during related Chapter 11 Cases. This Disclosure Statement also describes terms and provisions of the Plan, certain effects of Confirmation of the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan. Unless otherwise noted herein, all dollar amounts provided in this Disclosure Statement and in the Plan are given in United States dollars.

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THIS CHAPTER 11 CASE AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVES THAT SUCH SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE FULL TEXT OF SUCH DOCUMENTS. THE**

**DEBTORS DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.**

## II.     PLAN INFORMATION AND PROCEDURES

A.     <u>Notice to Holders of Claims and Interests</u>

This Disclosure Statement is being transmitted to Claim Holders for the purpose of describing the terms of the Plan and to others for informational purposes.  The purpose of this Disclosure Statement is to provide adequate information to enable the Holder of a Claim to make a reasonably informed decision with respect to whether to vote to accept or reject the Plan or to object to confirmation of the Plan to the extent such Holder possesses standing to do so.

The Debtors may ask the Bankruptcy Court to approve this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable the Claim Holders to make an informed judgment with respect to asserting any such objection. **APPROVAL OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.**

**ALL CLAIM HOLDERS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS APPENDICES CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO ASSERT ANY OBJECTION TO CONFIRMATION OF THE PLAN.**  This Disclosure Statement contains important information about the Plan and developments concerning the Chapter 11 Case.

**THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.**  No person has been authorized to distribute any information concerning the Debtors or the Plan other than the information contained herein.

**CERTAIN OF THE INFORMATION CONTAINED IN ANY DISCLOSURE STATEMENT IS, BY ITS NATURE, FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS.**  Except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that may occur subsequent to the date hereof and that may have a material impact on the information contained in this Disclosure Statement.  The Debtors does not anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences.  Accordingly, the delivery of this Disclosure Statement shall not under any circumstance imply that the information herein is correct or complete as of any time *subsequent* to the date hereof.

**EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.**

**B.** **Questions About Information**

If (1) you have any questions about (a) the packet of materials that you have received, or (b) the amount of your Claim; or (2) you wish to obtain, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), an additional copy of the Plan, this Disclosure Statement, or any appendices or exhibits to such documents, please contact:

> Justin P. Fasano, Esq.
> McNamee Hosea, P.A.
> 6404 Ivy Lane, Suite 820
> Greenbelt MD 20770
> 301-441-2420
> jfasano@mhlawyers.com

**C.** **Confirmation Hearing and Deadline for Objections to Confirmation**

Pursuant to § 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Bankruptcy Court has scheduled the Confirmation Hearing for _____, 2024, at \_\_\_\_\_ (prevailing Eastern time), at the United States Bankruptcy Court for the District of Columbia, Courtroom 1, U.S. Courthouse, 333 Constitution Avenue, Washington, DC 20001.  The hearing may be continued from time to time by the Bankruptcy Court without further notice except for the announcement of the new hearing date made at the hearing or at any subsequent continued hearing.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served so that they are **RECEIVED** on or before \_\_\_\_\_, by:

*Counsel for the Debtors*

> Justin P. Fasano, Esq.
> McNamee Hosea, P.A.
> 6404 Ivy Lane, Suite 820
> Greenbelt MD 20770
> 301-441-2420
> jfasano@mhlawyers.com

and


*United States Trustee*

> U.S. Trustee's Office
> Michael Freeman
> 1725 Duke Street
> Suite 650
> Alexandria, VA 22314

3

### III. HISTORY OF THE DEBTORS AND EVENTS LEADING TO COMMENCEMENT OF THE CHAPTER 11 CASE

#### A. History of the Debtors

Debtors are single asset real estate limited liability companies organized under the laws of the District of Columbia with a principal place of business located in the District of Columbia.

The sole significant tangible asset of Carpenters is the "Carpenters Property" which is that property commonly known as 2725 Cassedy Street, Silver Spring MD 20910, and more specifically known as Lot 22, Block 1 in a subdivision known as "Forest Glen Park" per plat thereof recorded as Plat No. 23377 among the Land Records of Montgomery County, Maryland. The Carpenters Property consists of six vacant condominium units located in Silver Spring, MD. The Carpenters Property was subject to liens in favor of Odeh Properties, LLC and WCP Fund I, LLC ("WCP").

The sole significant tangible asset of Stables is the "Stables Property" which is that property commonly known as 2701 Linden Lane, Silver Spring MD 20910, and more specifically known as Lot 43, Block 1 in a subdivision known as "Forest Glen Park" per plat thereof recorded as Plat No. 23374 among the Land Records of Montgomery County, Maryland. The Stables Property consists of seven vacant condominium units located in Silver Spring, MD. The Stables Property was subject to liens in favor of B&L Funding, LLC and WCP.

The Stables Property and the Carpenters Property are hereinafter collectively referred to as the "Properties."

#### B. Events Leading to Filing of Chapter 11 Cases

The events precipitating the Chapter 11 filings are the foreclosure filings scheduled by WCP on the Debtors' properties.

### IV. CHAPTER 11 CASES

#### C. Continuation of Business

Since the Petition Date, the Debtors has continued to operate as a Debtors in possession subject to the supervision of the Bankruptcy Court and the United States Trustee's Office in accordance with the Bankruptcy Code. In addition, the Bankruptcy Court will supervise the Debtors' employment of attorneys and other professionals as required by the Bankruptcy Code.

An immediate effect of the filing of the involuntary bankruptcy petition was the imposition of the automatic stay under § 362(a) of the Bankruptcy Code which, with limited exceptions, enjoined the commencement or continuation of all collection efforts by creditors (including WCP), the enforcement of liens against property of the Debtors and the continuation of litigation against the Debtors.  The automatic stay remains in effect, unless modified by the Bankruptcy Court or applicable law, until the Effective Date.

**D.**     **Significant Events During the Bankruptcy Case**

Below are descriptions of the notable events since the Petition Date in the twelve related cases.

1. The

**E.**     **Summary of Claims and Bar Date**

1.     Schedules and Statements of Financial Affairs:  The Debtors haved Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, as may be amended, the "Schedules and Statements") with the Bankruptcy Court.

2.     Claims Bar Date and Proofs of Claim:  The claims bar date has not been set.

**V.**     **PLAN DESCRIPTION**

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, AND TREATMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS ATTACHED THERETO.  THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST THE DEBTORS.**

**A.**     **Overview**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a Debtors is authorized to reorganize or liquidate its business for the benefit of its creditors.  The Debtors has filed the Plan as a means to maximize the value of the Debtors' Estate for the benefit of creditors.  The following is a summary of the significant provisions of the Plan.

All statements made below are general in nature and are qualified in their entirety by reference to the complete terms of the Plan attached hereto.  Creditors and parties-in-interest are urged to read the entire Plan and consult with their respective counsel, accountants, and business advisors in order to fully understand the Plan.

The Plan, upon confirmation by the Bankruptcy Court, shall be legally binding upon the Debtors, its creditors, and other parties-in-interest designated by § 1141(a) of the Bankruptcy Code. It is essential that Creditors fully understand the Plan in order to make an informed decision

with respect to the treatment of their respective Claims or Interests. Unless otherwise defined herein, all capitalized terms shall have the respective meanings assigned in the Plan. In the event that any disclosure herein provided appears to conflict with an express provision of the Plan, the explicit terms of the Plan, as incorporated as an integral element of the Disclosure Statement, are controlling.

The following is a summary of the Plan and a brief description of the treatment of the Classes of Claims and Interests.

**B.    Plan Objectives**

The Plan proposes the transfer of the Carpenters Property and the Stables Property to WCP in full and complete satisfaction of the Debtors' debt to WCP. WCP will pay all closing costs, senior liens, and US Trsutee fees.

The Plan proposes to fund a $1,500 reserve for each Debtor (the "Debtor Reserves").

**C.    Classification and Treatment of Claims and Interests**

1.    Unclassified Claims: Under the Plan, administrative claims and priority tax claims are unclassified, meaning they are not placed in any specific class. The Debtors have one known administrative claim: professional fees. To date the Debtors have no priority tax claims. The following is an explanation of how such claims shall be treated under the plan.

    **a.    Administrative Claims**

    i. *Allowed Administrative Expense Claims Other than Professional Fee Claims*: Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with the Plan and the Bankruptcy Code will be forever barred from asserting those Administrative Expense Claims.

    An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Debtors pay the Claim and served the motion or application on the Debtors and the U.S. Trustee. Persons seeking allowance of an Administrative Expense Claim under this paragraph shall be required to file a notice that the deadline to object to such allowance shall be the Administrative Expense Claims Objection Deadline. Provided, however, that the Debtors may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtors' business to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

ii. *Allowed Professional Fee Claims*: Final Fee Applications must be filed no later than forty-five (45) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtors, and the Office of the U.S. Trustee. Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive from the Debtors, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto by the Debtors. Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled vote on this Plan.

b.     **Priority Tax Claims**

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim. In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive from the Debtors, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, with post-petition interest at the Federal Judgment Rate in effect on the Petition Date on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first

7

Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.

### *Class 1 – Claims for Real Estate Taxes*

In full and complete satisfaction of any Allowed Secured Claim for real estate taxes, WCP shall pay any Allowed Class 1 Claim against Stables on the date of the Stables Transfer, and WCP shall pay any Allowed Class 1 Claim against Carpenters on the date of the Carpenters Transfer.  Holders of Allowed Class 1 Claims are unimpaired and not entitled to vote to accept or reject the Plan.

### *Class 2 – Secured Claim of WCP against Stables*

In full and complete satisfaction of the Allowed Secured Claim of WCP against the Stables Property, at a time of WCP Fund I's choosing, after seven days' notice, Stables shall convey the Stables Property to WCP or any other entity to which WCP Fund I directs that Stables makes such transfer (the "Stables Transfer") free and clear of any liens, claims, or interest.  WCP shall be responsible for all costs of effectuating such transfer, including payment of all Class 1 Claims, closing costs, US Trustee fees, and any lien that is senior to WCP's lien on the Stables Property.  WCP shall retain its lien against the Stables Property until the Stables Transfer is consummated.  Upon confirmation of the Plan, the Stables Note shall be deemed fully satisfied as to Carpenters, and its agents, officers, consultants, employees, legal counsel, accountants, financial advisors, principals, and co-obligors and representatives of any kind co-obligors, and, and Stables shall have no further liability to WCP, except their obligation to make the Stables Transfer.  Holders of Allowed Class 2 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 3 – Secured Claim of WCP against Carpenters*

In full and complete satisfaction of the Allowed Secured Claim of WCP against the Carpenters Property, at a time of WCP Fund I's choosing, after seven days' notice, Carpenters shall convey the Carpenters Property to WCP or any other entity to which WCP Fund I directs that Carpenters makes such transfer (the "Carpenters Transfer") free and clear of any liens, claims, or interest.  WCP shall be responsible for all costs of effectuating such transfer, including payment of all Class 1 Claims, closing costs, US Trustee fees, and any lien that is senior to WCP's lien on the Carpenters Property.  WCP shall retain its lien against the Carpenters Property until the Carpenters Transfer is consummated.  Upon confirmation of the Plan, the Carpenters Note shall be deemed fully satisfied as to Carpenters, and its agents, officers, consultants, employees, legal counsel, accountants, financial advisors, principals, and co-obligors and representatives of any kind co-obligors, and Carpenters shall have no further liability to WCP, except their obligation to make the Carpenters Transfer.  Holders of Allowed Class 3 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 4 – Secured Claims of Linden and Cassedy Condominium*

In full and complete satisfaction of any Secured Claims of Linden and Cassedy Condominium, Linden and Cassedy Condominium shall be treated as unsecured creditor under Class 8 of the Plan.  All liens of Class 4 Creditors shall be deemed extinguished on the Confirmation Date.Holders of Allowed Class 4 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 5 – Secured Claims of The National Park Seminary Master Association*

In full and complete satisfaction of any Secured Claims of The National Park Seminary Master Association, The National Park Seminary Master Association shall be treated as unsecured creditor under Class 8 of the Plan.  All liens of Class 5 Creditors shall be deemed extinguished on the Confirmation Date.  Holders of Allowed Class 5 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 6 – Secured Claims of Odeh Properties, LLC*

In full and complete satisfaction of any Secured Claims of Odeh Properties, LLC, Odeh Properties, LLC shall be treated as unsecured creditor under Class 8 of the Plan.  All liens of Class 6 Creditors shall be deemed extinguished on the Confirmation Date.  Holders of Allowed Class 6 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 7 – Secured Claims of B&L Funding, LLC*

In full and complete satisfaction of any Secured Claims of B&L Funding, LLC, B&L Funding, LLC shall be treated as unsecured creditor under Class 8 of the Plan.  All liens of Class 7 Creditors shall be deemed extinguished on the Confirmation Date.  Holders of Allowed Class 7 Claims are impaired and entitled to vote to accept or reject the Plan.

### *Class 8 – Unsecured Claims*

On the Distribution Date, the Debtors shall pay any amounts left over from the applicable Debtor Reserve after payment of Administrative and Priority Tax Claims, to holders of General Unsecured Claims in full and complete satisfaction of any General Unsecured Claims. Holders of Allowed Class 8 Claims are impaired entitled to vote to accept or reject the Plan.

### *Class 9 – Equity Interests*

Holders of Class 9 Interests shall have their right to any distribution canceled under the Plan.  Holders of Class 9 Interests will not receive any payments.  James Smith will continue to manage the Debtors under their existing operating agreements  Class 9 Interests are impaired.

**VI.    PLAN IMPLEMENTATION/EFFECT OF CONFIRMATION OF PLAN**

   **A. Transfers**

At any time of WCP's choosing, the Debtors shall convey the Properties to WCP or any other entity to which WCP directs that the Debtors make such transfer. WCP shall be responsible for all costs of effectuating such transfer, including payment of all required real estate taxes, closing costs, water/sewer liens and any required US Trustee fees.

### B. Debtor Reserves

In order to facilitate the confirmation of this Plan, within 10 days of the Confirmation Date, James shall pay the Debtor Reserves to undersigned counsel for the Debtors to be held as security for the Debtors' obligations under this Plan (and not as a retainer for fees).

### C. Revesting of Property of the Estate

All property of the Estate shall revest in the Debtors on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, except for the liens specifically granted by the Plan.

### D. Retention of Professionals

On the Effective Date, the Debtors shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, consultants, and financial advisors, as needed to assist them in fulfilling their obligations under the Plan, and on whatever fee arrangement they deem appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Debtors after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein. If the Debtors have any objection to an application for compensation submitted to it by a Professional, the Debtors and the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter. Any Professional Fee Claims arising after the Effective Date shall be paid out of retainers and the applicable Debtor Reserve.

### E. Operation of Business

Upon confirmation of the Plan, as may be modified from time to time, the Debtors shall be free to, in a manner not inconsistent with the Plan or any Order issued by the United States Bankruptcy Court, to (1) pay Post-Effective Date Expenses without restriction, (2) operate its business without restriction.

### F. Indemnification Obligations

Except as otherwise provided in the Plan or any contract, instrument, release, or other agreement or document entered into in connection with the Plan, any and all indemnification obligations that the Debtors has pursuant to a contract, instrument, agreement, certificate of

10

incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in the Plan shall be deemed to release the Debtors' insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtors, to the extent of available coverage.

G. **Entry of a Final Decree**

Promptly following i) occurrence of the Effective Date; ii) the passage of the applicable claims bar dates in the Case, the Debtors may file a motion with the Bankruptcy Court to obtain the entry of a final decree.

H. **United States Trustee Fees and Reports**

All fees then due and payable pursuant to 28 U.S.C. § 1930 Effective Date shall be paid by the Debtors. All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or after the Effective Date shall be paid by WCP. All such fees that become due and payable thereafter by the Debtors shall be paid by the Debtors when due. The Debtors shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of a final decree. The Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtors.

I. **Post-Effective Date Effect of Evidences of Claims**

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

J. **Transfer Tax Exemption**

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the transfer of the Stables Property and the Carpenters Property, and any deed of trust evidencing any loan obtained to purchase either property, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Property.

K. **Discharge**

Pursuant to Bankruptcy Code section 1141(d)(1), and subject to the occurrence of the Effective Date, Confirmation will discharge all Claims against the Debtors except for the obligations and Liens expressly created or preserved by this Plan. All injunctions or stays

provided for in the Chapter 11 Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date. On the Effective Date, the Discharge will go into effect.

## VII. LITIGATION

### A. Pending Litigation and Disclosures

There is no known pending litigation.

### B. Preservation of Causes of Action and Defenses

Except as otherwise expressly provided in the Plan, on the Effective Date, all property of the Estate, including, but not limited to, all claims, rights, defenses, Causes of Action of the Debtors, shall vest in the Debtors, free and clear of all liens, Claims, charges or other encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Debtors shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Debtors may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors, at this time, or facts or circumstances which may change or be different from those which the Debtors believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court. The Debtors, is authorized to exercise and perform the rights, powers and duties held by the Debtors' Estate, including without limitation the authority under Bankruptcy Code § 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtors shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.

### C. Preclusion Doctrines

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been specifically released in the Plan or other Final Order. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtors from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order. All Causes of Action are specifically preserved.

No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Debtors will not pursue any and all available claims, rights, defenses, or Causes of Action against them. The Confirmation Order shall not bar the Debtors by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**THE DEBTORS WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE VARIOUS CAUSES OF ACTION IN ITS DISCRETION WITH THE ADVICE OF COUNSEL. THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING BUT NOT LIMITED TO THE MERITS OF THE VARIOUS CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION. AS SET FORTH IN ARTICLE IX OF THE PLAN, THE DEBTORS AND ITS PROFESSIONALS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE DEBTORS' GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

## VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption and/or Rejection of Executory Contracts and Unexpired Leases

The Debtors have no executory contracts on unexpired leases. Any executory contracts on unexpired leases will be deemed rejected upon entry of the Confirmation Order.

### B.     Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an Executory Contract or Lease must be filed with the Court and served on the Debtors and its counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Debtors reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

## IX.     RETENTION OF JURISDICTION

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Case, the Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or

13

secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

      2.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

      3.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

      4.      Effectuate performance of and payments under the provisions of this Plan;

      5.      Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to the Chapter 11 Case, this Plan, or any Plan Document;

      6.      Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

      7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

      8.      Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

      9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

      10.      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

      11.      Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the

Confirmation Order;

12. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

13. Except as otherwise limited herein, recover all Assets of the Debtors and property of the Estate, wherever located;

14. Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

15. Hear and determine all matters related to the property of the Estates from and after the Confirmation Date;

16. Hear and determine any Causes of Action;

17. Hear and determine all disputes involving the existence, nature, or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

18. Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

19. Hear and determine all matters related to the Carpenters Transfer and the Stables Transfer

20. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

21. Enforce all orders previously entered by the Bankruptcy Court;

22. Dismiss the Chapter 11 Cases; and

23. Enter a final decree closing the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

X. **CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

A. **Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in writing in accordance with the Plan:

15

    1.    A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125 shall have been entered by the Bankruptcy Court;

    2.    A proposed Confirmation Order in form and substance, reasonably acceptable to the Debtor;

    3.    Approval of all provisions, terms and conditions hereof in the Confirmation Order.

**B.**    **Conditions to Effective Date**

The Plan will not be consummated or become binding unless and until the Effective Date Occurs. The Effective Date will be the first Business Day after the following conditions have been satisfied:

    1.    The Confirmation Order shall have been entered in the Chapter 11 Case and shall provide that the Debtors is authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

    2.    The Confirmation Order shall have become an unstayed Final Order, except that the existence of an appeal absent a stay pending appeal shall not delay the Effective Date;

    3.    All Exhibits shall be, in form and substance, reasonably acceptable to the Debtors, and shall have been executed and delivered by all parties' signatory thereto;

    4.    The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

    5.    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

**C.**    **Waiver of Conditions**

Each of the conditions set forth in the Plan, except for entry of the Confirmation Order, may be waived in whole or in part by the Debtors. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors as a basis not to consummate the Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.**    **Consequences of Non-Occurrence of Effective Date**

In the event that the Effective Date does not timely occur, the Debtors reserve all rights to seek orders from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void.  Notwithstanding the forgoing, the portion of the Confirmation Order approving any sale of the Property will remain effective.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtors may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## XI.    CERTAIN FACTORS TO BE CONSIDERED

The Holders of Claims against the Debtors should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before deciding whether to vote to accept or to reject the Plan if it is determined that solicitation of votes on the Plan is necessary.

### A.    Certain Bankruptcy Considerations

The Plan provides for certain conditions that must be fulfilled prior to Confirmation of the Plan and the Effective Date.  As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions in the Plan will be met (or waived) or that the other conditions to Confirmation, if any, will be satisfied.

### B.    Tax Consequences

**THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL.  THE SELECTED FEDERAL AND STATE TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM.  ACCORDINGLY, AS NOTED ABOVE, EACH HOLDER OF AN ALLOWED CLAIM IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.**

**THE DEBTORS DO NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN. CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTORS OR CREDITORS.**

1. <u>Federal Income Tax Consequences to the Debtors</u>: The Debtors will not incur capital gains tax as a result of the sale, although the Class 9 Interest Holders may incur such obligations.

2. <u>Federal Income Tax Consequences to Creditors</u>: The character, amount and timing of income, gain or loss the Holders of Allowed Claims and Interests may recognize as a consequence of the Distributions under the Plan will depend upon, among other things, (i) the manner in which the Claim or interest was acquired, (ii) the length of time the Claim was held, (iii) whether the Claim was acquired at a discount, (iv) whether the Holder of an Allowed Claim has taken a bad debt deduction for the Claim, (v) whether the Holder has previously included accrued but unpaid interest with respect to the Claim, (vi) the Holder's method of tax accounting, (vii) whether the Claim is an installment obligation under the tax laws, and (viii) the type of consideration received or deemed received by the Holder in exchange for its Claim. Therefore, Holders of Allowed Claims should consult their tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequences to such Holders as a result thereof.

## XII. FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS

### A. Feasibility of the Plan

The Bankruptcy Code requires that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors. The Plan contemplates the liquidation of the Debtors' assets. For these reasons, the Debtors believes that the Plan meets the feasibility requirement.

### B. Best Interests Test

The "best interests" test, as set forth in Bankruptcy Code § 1129(a)(7), requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In this case, a liquidation analysis is not necessary. The only assets of the estate are the Properties, which have no equity above WCP's liens

## XIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors believe that the Plan affords Holders of Claims the potential for a better realization on the Debtors' Assets than a Chapter 7 liquidation, and, therefore, is in the best interests of such Holders.

If, however, any requisite acceptances of voting Classes of Claims are not received, or no Plan is confirmed and consummated, the theoretical alternatives include: (a) formulation of an alternative plan or plans of liquidation; (b) liquidation of the Debtors' estates under Chapter 7 of the Bankruptcy Code; (c) appointment of a Chapter 11 trustee or (d) dismissal of the Debtors' case under 11 U.S.C § 1112.

### A.     Alternative Plans

If the Plan is not confirmed, the Debtors or, after exclusivity expires, any other party in interest could attempt to formulate and propose a different plan or plans of reorganization or liquidation.

With respect to an alternative liquidation plan, the Debtors have explored various other alternatives in connection with the extensive negotiation process involved in the formulation and development of the Plan. The Debtors believe that the Plan enables Creditors to realize the greatest possible value under the circumstances, and, as compared to any other plan of liquidation, has the greatest chance to be confirmed and consummated.

### B.     Liquidation under Chapter 7

If no Plan is confirmed, the Chapter 11 Cases may be converted to cases under Chapter 7 of the Bankruptcy Code. As discussed above, no distribution would be made in Chapter 7. As a result, the Debtors do not believe that unsecured creditors would receive a greater distribution under Chapter 7 of the Bankruptcy Code than they would under the Plan.

### C.     Dismissal of the Chapter 11 Cases

If no Plan is confirmed, the Debtors or other parties in interest may seek dismissal of the Chapter 11 Cases pursuant to Bankruptcy Code § 1112. Without limitation, dismissal of the Chapter 11 Cases would terminate the automatic stay and might allow creditors to foreclose liens on the Property, both of which would delay the transfer of the Properties. Accordingly, the Debtors believes that dismissal of the Chapter 11 Cases could reduce the value of the Debtors' assets.

Dated: January 17, 2024          Respectfully submitted

/s/ Justin P. Fasano
Justin P. Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Tel: 301-441-2420
Fax: 301-982-9450
jfasano@mhlawyers.com
*Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that on this January 17, 2024, a copy of the foregoing was served by CM/ECF on all parties requesting such notice.

/s/ Justin P. Fasano<br>
Justin P. Fasano